# Case No. 615.

## ATKINSON v. PHILADELPHIA & T. R. CO.

## FIELD v. SAME.

### [14 Haz. Reg. Pa. (1834,) 10.]

Circuit Court, E. D. Pennsylvania.

NAVIGABLE WATERS — OBSTRUCTION—INJUNCTION

[1. An act incorporating a certain railroad company authorized, by necessary implication, the erection of bridges, providing that no obstruction should be placed across any stream declared a public highway so as to interfere with the full and free navigation thereof, nor across any unnavigable stream so as to divert its flow to the injury of private rights, and that, for injuries so inflicted, compensation should be given as for other property. Held, that an injunction would not be granted by a federal court, at the suit of an owner of certain vessels under contract to pass with cargo beyond the bridge, when it did not appear that the bridge contemplated would necessitate any alteration to be made in such vessels other than striking the masts, and any injury caused by the construction of the bridge admitted of adequate compensation.]

[2. Were it made to appear that the proposed bridge was a common nuisance or purpresture, the proper remedy would be in a court of law, at the prosecution of the state for a public offense.]

[3. Wherever the public convenience and common interest of the people demand it, the state, by legislative enactment, may repeal or modify a law declaring a stream a public highway.]

[4. Cited in Baring v. Erdman, Case No. 981, to the point that equity will not interfere by injunction when the act complained of is done under color of authority conferred by law until all doubts as to such authority have been removed, and the matter finally determined at law.]

[In equity. Suit by Chalkley Atkinson and others against the Philadelphia & Trenton Railroad Company for an injunction to restrain the defendant from creating a bridge across the Neshaminy creek, on a proposed route of a railroad, the construction of which was authorized under an act of the general assembly of Pennsylvania. Injunction denied.]

C. J. Ingersoll, for plaintiffs.

W. B. Reed and J. Sergeant, for defendants.

BALDWIN, Circuit Justice. Chalkley Atkinson vs. John Savage, president, Simon Gratz and others, citizens of Pennsylvania, and Edmund Carlis, and Jesse Oakley, citizens of New York, directors of an incorporated company called the Philadelphia and Trenton Railroad Company. Timothy Field vs. The Same Defendants.

The complainants having filed their respective bills on the equity side of this court, praying for injunctions to restrain the defendants from erecting a bridge across the Neshaminy creek on the route of a railroad from Philadelphia to Trenton, which they are about constructing under order of an act of assembly, but as is alleged without any authority in law, to the great injury of the complainants, now move that one be granted till answer and the further order of the court. Due notice has been given to the defendants, who accordingly appeared by their counsel; affidavits have been taken on both sides, and the cases fully and ably argued; they are the same in their leading features, the principal difference between them being that Mr. Atkinson is under a contract for delivering lime in vessels navigating the Neshaminy, while Mr. Field is employed in transporting stone thereon from places on said river above the site of the contemplated bridge. As they both depend on the same facts and principles of law, it is unnecessary to recite the allegations of both bills.

The bill of Mr. Atkinson states that he is a citizen of New Jersey, employed in transporting articles by water to and from different places, for which purpose he is the owner of five schooners; that he has recently in the course of such business, made a contract with Anthony Taylor, who resides on the Neshaminy river, in Bucks county, in this state, to deliver to him one thousand bushels of lime at his wharf about two miles from the mouth of said river, which is by law a public navigable river or highway for the free passage of vessels up and down the same. That the defendants, under color of an act of assembly of this state for incorporating the Philadelphia and Trenton Rail Road Company, passed in February 1832, are about constructing a permanent bridge over and across said stream, near its mouth, where it is navigable for sea vessels, and thence to the farm of said Taylor, which bridge is intended to be a flat structure, without an elevated arch, span, draw, or other contrivance for permitting masted vessels to pass up and down the river, freely without interruption, hindrance, delay, or unnecessary expense as heretofore. That neither by the laws of Pennsylvania, or the constitution of the United States, can any obstruction be placed across the said stream; that it is contrary to law, to impede or interfere with the full and free navigation thereof, for the accommodation of the inhabitants on said river, as well as all the citizens of the United States who may have occasion to pass and repass on the same with any masted vessel. That the act of incorporation gives no authority to erect such a bridge as is contemplated, which the defendants have begun to construct, or any bridge which shall in any way impede the full and free navigation of said river. The prayer of the bill, is for an injunction to restrain the said president and directors, their agents, workmen, laborers, and all other persons employed about said railroad, from constructing any bridge whatever over and across said river, and for further relief. The complainant asserts no right of property on the bank or in the bed of the river; his claim to the interposition of this court rests on his contract with Mr. Taylor for the delivery of one thousand bushels of lime at his wharf above the site of the contemplated bridge, and on the common right of navigation resulting from the act of assembly declaring the Neshaminy a public navigable river. In this position, he asks us to arrest the completion of a public improvement now in rapid progress under an authority claimed in virtue of a law especially directed to this object; on such an application, it was our plain duty to pause and inquire whether this was a case in which an injunction should be granted on the usual allegations of ordinary bills, and the common affidavit of their truth.

That the matters involved are of deep concern to the parties and the public at large, cannot be denied, or that the consequences of our interference would be most serious; the injunction asked is not a matter of right, but rests in the discretion of the court to be exercised according to certain well known rules of equity from which we cannot depart. It is perhaps the highest, most delicate, and dangerous power which can be confided to any judicial tribunal, yet it is one which is indispensable for the purposes of preventive justice; the nature of the cases which call for its exercise is such too, as often to require a prompt and decisive action, on an ex parte application without a hearing of the adverse party, and sometimes without even notice, as that might lead to the immediate commission of an irremediable injury, in order to avoid the effect of the injunction, as the transfer of stock, the negotiation of a bill of exchange or promissory note, the transfer of a chattel of peculiar value, &c. On the other hand, as the erroneous exercise of this power may operate to the irretrievable injury of the party enjoined, and for which, as it is the act of the court, he can have no legal redress in damages, while the complainant may have his remedy at law, though the relief in equity is refused; too much caution cannot be used by the court in satisfying themselves that the case presented for their

summary action is one which admits of neither doubt or delay. Hence the complainant must show in himself an apparent prima facie right of property or action to the subject matter of the injunction, as well as an injury intended or threatened by the defendant, which if done cannot be compensated by damages or adequate legal remedies, and can be effectually averted only by the protecting preventing power of a court of equity. [Osborn v. Bank,] 9 Wheat. [22 U. S.] 840, 846; Bonaparte v. Camden & A. R. Co., [Case No. 1,617.] It is never exercised in a doubtful case, or in a new one, which does not come within the established rules of equity, (2 Dickens, 600; Coop. 77; 7 Johns. Ch. 334;) and if the courts of the United States can be at liberty to depart at all from the settled course of proceeding in chancery, it would seem to be their duty to proceed with more caution than its ordinary rules require. In England it is in the discretion of the chancellor, to proceed without notice, it is directed or not, according to the nature of the case; if the effect of the injunction would be to suspend the operations of a manufactory established and carried on at great expense, he would not proceed one step without notice of the motion for an injunction, (18 Ves. 217;) but this is merely a matter of discretion. The act of congress however makes notice indispensable before any proceedings had by the court—"Nor shall such writ be granted in any case without reasonable notice to the adverse party, or his attorney of the time and place of moving for the same." [Albers v. Whitney, Case No. 137.] The spirit of this requisition is not merely to give the notice in fact, the party is entitled to all the benefits resulting from notice; to be heard by his counsel on all matters appearing in the bill or disclosed in the affidavits of the complainant, not as amici curiae, but as representing the party in interest who may be affected by the motion as to whom it becomes an adversary suit, even before demurrer, plea, or answer. It is difficult to draw with precision the line between the merits of the summary application, and the final hearing on the whole equity of the case after an issue. On the motion for the injunction, the court will permit either party to inform its conscience as to the nature of the case, the consequences of granting or refusing it; without going into a full examination of the respective rights of the parties, they are bound to inquire into all circumstances bearing on the necessity of immediate action to prevent an irreparable injury to a prima facie right, and in doing so are not confined to the case made out by the complainant. Though this remedy will not be withheld merely because the title of the complainant may admit of doubt, or be open to litigation, there must be a clear case made out of impending danger, requiring prompt action to save an apparent right from destruction. Eden, Inj.

234; 7 Ves. 309; Dickens, 101, 102; 2 Atk. 182, 184. The defendant has an undoubted right to show by affidavit, or otherwise, the authority or claim of right by which he acts, and to explain his conduct in relation to the subject matter of complaint. The whole matter resting solely in the discretion of the court, they must be governed in its exercise by the particular circumstances of each case; a greater latitude will be allowed in those which affect persons engaged in large and expensive undertakings, especially great works of public improvements, in which a great portion of the community may be interested, than in those merely affecting individuals, litigating on their own account. The consequences of arresting the progress and completion of canals, bridges, or artificial roads, are too serious, and the responsibility of doing it is too great to be assumed, unless in a plain case of the violation of rights which are under the peculiar protection of courts of equity. Vide 7 Johns. Ch. 330. In this case it was of special importance, to be well informed as to the kind of navigation upon the Neshaminy, the kind of bridge proposed to be constructed,—the extent of the inconvenience to which vessels would be subjected in consequence of its erection on the plan contemplated by the defendants, and the nature of the injury which might be done to the complainants by its completion. To restrict the defendants, to the case made out by the bill and affidavits of the complainants, would mainly deprive the former of the benefits of notice of the motion, as well as confine our inquiries within limits much too narrow for a case so interesting to all concerned as this; in the development of which we are fully satisfied that a less expanded view of the subject, as to the localities and facts, would not have enabled us to come to a conclusion satisfactory to our minds, as to the justice and equity of the application.

A preliminary question of jurisdiction has been raised by the counsel of the respondents, on which we do not deem it necessary to express any opinion; without being understood as deciding it, by taking the case into our consideration, we shall assume that there are proper parties before us, for all the purposes of the motion, and proceed to consider the grounds on which it is urged and resisted. By an act of assembly of March, 1771, the Neshaminy was declared a public highway for the purposes of navigation, up and down the same as far as Barnley's ford, and no further. 1 Smith, Laws, 322. All citizens of this and other states, had therefore, the full and free right of passing and re-passing on the said river with all kinds of vessels or water craft, which no individual could in any way impede or obstruct, without subjecting himself to an indictment for a nuisance or an action for damages by the party injured. This common right is as much under the protection of the law, as a

right of property in a citizen, in all matters relating to individuals to the full extent in which the legislature have granted it; but it is a right derived from legislation, which may be abridged or modified from time to time, as may be thought most conducive to the public welfare, by authorizing the erection of bridges or dams, which may subject the navigation to partial interruption or wholly destroy it.

It is also competent to the legislature, to repeal a law declaring any stream a public highway for the purposes of navigation, as it is to vacate a road; the source of the power is the same, and the reasons for its exercise on land or water are the same, public convenience and the common advantage of the people, for the furtherance of which the legislature may take away or modify at their pleasure a common right of passage, or any easement which could be enjoyed by any person, who had no right of soil or property, in the river or road. The only restraint which the constitution imposes on their authority is, that private property shall not be taken for public use, without just compensation, and the consent of the representatives of the people. Const. Pa. art. 9, § 10. Laws in relation to roads, bridges, rivers, and other public highways, which do not take away private rights to property, may be passed at the discretion of the legislature, however much they may affect common rights, even private rights, if they are not those of property, may be taken away if it is deemed necessary for the promotion of public improvements, or if their destruction is the necessary consequence of their construction, without making compensation. The various laws of this state authorizing the making canals, either by the state or incorporated companies, have been so construed by the supreme court, as to establish the rule—"that the jury are to value the injury to property, without reference to the owner or the actual state of his business, and in doing that, the only safe rule is to inquire, what would the property unaffected by the obstruction have sold for at the time the injury was committed, what would it have sold for as affected by the injury. The difference is the true measure of compensation." 7 Serg. & R. 422, 423. The injuries to be compensated, are those which are done to property immediately, "as the swelling of waters into mill races, the inundation of land, the carrying of canal or lock through a man's land, or the taking away materials." This is the line which seems to have been marked by the legislature. Compensation shall be made for all damage from immediate injury to property, but not for any damage where there is no legal injury, which is called damnum sine injuriae—as the loss of a fishery by the erection of a dam in the Schuylkill, whereby the passage of fish are prevented. "For not only may the owners of land contiguous to the river, complain of the obstruction, but all others near it who have been accustomed to receive fish thence, or to fish with an angle or hoop net. There are other kinds of injury too, sustained particularly by the owners of land on the river, between the Fairmount dam and the lower falls. All those persons have lost the benefit of navigation from toll, in batteaux flats, &c. which was very useful, as it served for carrying produce to market, and bringing up manure for their lands. Yet it has not been contended that for such injuries compensation is to be made. Suppose the health of the country to be injured by evaporation from the dams, is compensation to be made for this the greatest of all injuries? I presume not. No property has been taken from him, he had no property in the fish or the river, and he was bound to know the law by which the river remained public property, and of course all emoluments were precarious,' 14 Serg. & R. 83, 84." So of a spring of water between high and low water mark, of the use of which the owner of adjacent land has been deprived,—he is entitled to no compensation, because, he had no vested property in it, "and it is ridiculous (say the supreme court) to talk gravely of a great national work being obstructed because a man will be deprived of the use of what never was his own.", 1 Pen. & W. 467. We must consider these adjudications of the supreme court of the state, as establishing the general principle, that the right to the use of the navigable streams which are public highways, either for fishing or navigation, is subordinate to laws which regulate its general police and internal concerns; and that no common right in the common property of rivers, is considered as private property, or the subject of individual ownership. As it rests wholly in the discretion of the legislature, to provide for any other injury than what the constitution compels them to compensate, the sole remedy for any damages, sustained by the interruption of any common right, is that which the law authorizing the construction of a road or canal across a navigable stream, prescribes in favor of a party who may sustain a loss; if the law is silent, the loss is deemed no legal injury, which gives a claim to redress. So far then as depends on the constitution and laws of Pennsylvania, and their judicial construction, there is no doubt that the right of navigation on the Neshaminy may be wholly or partially taken away by the legislative power of the state, without compensation.

The only remaining objection to the validity of this law rests on its alleged repugnancy to the constitution of the United States by interfering with the power of congress "to regulate commerce among the several states." and violating that provision which declares that "the citizens of each state shall be entitled to all privileges and immunities in the several states."

The first of these objections is fully an-

swered by the opinion of the supreme court in the case of the Black Bird Creek Marsh Co., 2 Pet. [27 U. S.] 245. The legislature of Delaware had authorized this company to erect a dam across a navigable creek; the dam formed a permanent obstruction to the navigation, so that no vessel could pass on the stream; but the court decided, that the act of assembly was neither repugnant to the constitution nor in conflict with any act of congress on the subject of commerce or navigation; and that this abridgment of the common right of navigation was a matter between the government of the state and its citizens; of which they could take no cognizance. Id. 252. State laws on the subject of turnpike roads, ferries, and bridges, are a part of the system of internal commerce, and police of the respective states, the regulation of which they have reserved to themselves without any control by congress,—[Gibbons v. Ogden,] 9 Wheat. [22 U. S.] 208; [Brown v. Maryland,] 12 Wheat. [25 U. S.] 443; [Livingston v. Van Ingen,] 9 Johns. 560, 564, 573; 4 Wash. C. C. 378, [Corfield v. Coryell, Case No. 3,230;] Bennett v. Boggs, [Case No. 1,319,]—and no law on these subjects is prohibited by the constitution of the United States, unless it impairs the obligation of a contract,—[Satterlee v. Matthewson,] 2 Pet. [27 U. S.] 410, etc. The other objection is wholly inapplicable, as the law abridges the right of the citizens of Pennsylvania to the free navigation of the Neshaminy to the same extent as those of New Jersey, while both are equally entitled to its benefits. This brings us to the construction of the act. The eighth section authorizes the company to construct a railroad from Philadelphia to Trenton which by necessary implication gives the power of erecting bridges over the stream between these places, without which the object of the law could not be effected. This is admitted by the counsel for the complainants, but he contends, that the proviso to the eleventh section is a positive prohibition, to erect any bridge that shall not leave the navigation as full and free from all impediments as it has heretofore been, so that vessels can pass and repass with standing masts. This proviso is in these words: "That no obstruction whatever shall be placed on or across any stream now declared a public highway, so as to impede or interfere with the full and free navigation thereof; or to change the direction of any stream or water course not declared a public highway, so as to affect the rights and interests of the owners thereof, without the consent of the said owners, unless the right to the same be obtained by such process as is before directed in relation to other property; and that any inconvenience or expense attending the alteration of vessels now navigating said streams to conform, to the bridges erected by said company shall be paid out of the funds of the company." The sense of the legislature

as expressed in this proviso seems clear; the first part is a declaration that there shall be no obstruction to the full and free navigation of the streams, the last clause is the legislative construction of the first, that an inconvenience or expense in so altering the vessels as to conform to the bridge, is not such an obstruction as is prohibited; it is by necessary implication a declaration, that the company are not bound to conform the bridge to the vessel, but that the vessel must be made to conform to the bridge, on the company paying the expense. We are bound to give this meaning to the law, or the last sentence becomes senseless for it can admit of none other; taking the whole together the sense is obviously, that if the erection of the bridge causes no other obstruction to the navigation, than the inconvenience in the alteration of the vessel passing it, it is within the authority of the law. This is the more evident, from the obligation of the company to pay for the expenses being confined to vessels "now navigating said streams;" this refers to the time of passing the act incorporating the railroad company, and would exclude the owner of any vessel which had not in February 1832, navigated the Neshaminy from a right to call on the company for any reimbursement of the expenses attending the alteration. The words "full and free navigation," must therefore be taken with the qualification attached to them by the legislature; which precludes us from considering such a bridge as they have authorized to be erected, as an obstruction in violation of the law; if the bed of the river is unobstructed, if vessels can freely pass and repass between the piers of the bridge, without injury or interruption, it seems to us that the public common right of navigation is protected to the extent contemplated by the law. Had it been intended that the construction of the bridge should have been such, as to permit masted vessel to pass, there would have been a provision, that a draw should have been made as is often done; this seems to have been a matter left to the discretion of the company, on condition of their making compensation to the owners of vessels then navigating the river.

So far as we can judge from the bills and affidavits, the only subject of complaint seems to be, that the masts of the vessels must be struck in order to pass the bridge, according to its present plan of construction; it is admitted that such is the fact, and it is not denied that vessels with struck masts can freely and safely navigate the river without meeting any obstruction from the bridge, except the trifling delay in striking and raising them. Though the prayer of the bill is for an injunction to restrain the erection "of any bridge," the case has not been pressed to that extent in the argument; the great question seems to be whether the company have a right to erect one without a draw, which will permit those vessels which have

standing masts to pass at pleasure. It appears to us, that the law imposes no such restriction, but that it contemplates the striking the masts, as the very alteration for which provision is made. The affidavits point us to no other inconvenience or expense to which the owners of vessels can be subjected, and unless some other is pointed out, it may be fairly inferred that none other exists; the consequence is, that the owners of vessels must submit to this restriction on their right of navigation on the terms prescribed. The legislature had the power to authorize the erection of a dam or causeway which would stop the navigation, if in their opinion it was conducive to the general welfare; whether it would be a discreet exercise of their power is not for this court to decide, as the whole subject is clearly within their discretion which the judicial power cannot control. [Satterlee v. Matthewson,] 2 Pet. [27 U. S.] 412; [Providence Bank v. Billings,] 4 Pet. [29 U. S.] 563; [McCulloch v. Maryland,] 4 Wheat. [17 U. S.] 423; [U. S. v. Arredondo,] 6 Pet. [31 U. S.] 729. They have thought proper to authorize this company to subject the navigation of the streams on the route of the road to some inconvenience under the obligation making compensation for the only injury to the common right of the citizens, which they deemed a proper subject of indemnity. In this respect and to this extent, they put it upon the same footing as private property, but they have deemed any other inconvenience, expense or _ abridgment of navigation, to be matters of subordinate importance to the construction of the road—these are questions of public policy with which we cannot interfere without usurping legislative powers. Though as it would seem from the affidavits, that the contemplated bridge may render the Neshaminy unnavigable for sea vessels, yet that must have been foreseen by the legislature, to be the necessary consequence of the authority given by the eleventh section, they have made no provision for such a case, the same effect has been produced on the Schuylkill, and other navigable rivers in the state, over which permanent bridges without draws have been erected by corporations under the authority of laws without a doubt of their validity or expediency. The authority given to this corporation, is agreeable to the uniform course of legislation, which allows a degree of latitude in the construction of works of public improvement, according to its nature and objects, by which more or less discretion is allowed as to the route, plan and execution, which we are not prepared to say has been wantonly abused by the officers of the company. Vide 2 Dow, 521; 20 Johns. 740; 7 Johns. Ch. 330.

The affidavits produced on the part of the company, especially that of the person employed to construct the bridge, are very strong to show, that its erection on the present plan is not only required by considerations of convenience, economy, and security, to the company; but that the making of a draw would be productive of very serious obstructions to the navigation, by requiring an additional pier in the bed of the stream, which would narrow the channel at low water, so that vessels could not pass. They also state, that the bridge crosses the stream at an angle with the current, whereby vessels would be incommoded and endangered in passing through a draw, and express an opinion that the striking of the masts is a much less inconvenience than passing the draw. These statements and opinions, tend strongly to prove, that the powers of the company have not been so exercised as to evince either a want of discretion, or a design to deviate from their authority by perverting it, so as unnecessarily to impair the rights of navigation. Whether they have abused, or misused their privileges, is an inquiry more proper for the legislature to institute under the provisions of the 20th section of the law, than for this court to make on an application for a summary injunction; if we could interfere at all in such an allegation, it would only be on a clear departure from the route, or a palpable abuse of their discretion, in a manner that could admit of no colorable excuse—such a case we think has not been made out by the complainants.

We cannot perceive in the law in question, any excess of legislative authority, any violation of any provision of the state or federal constitution, or in its execution by the defendants, the assumption of any power not conferred upon them, any wanton invasion of public or common rights, or any legal ground for an injunction arresting the further progress of the work, on any principle hitherto recognized in a court of equity. Were it even conceded that the bridge is a common nuisance, or a purpresture, the remedy is in a court of law at the prosecution of the state for the public offence, where the defendants would have a right of trial by jury before conviction. If this court enjoin them, it is in effect an adjudication that the offence has been committed, and the consequence becomes visited upon them in anticipation of their legal guilt. Whether a court of equity would do this in any case before a conviction at law, is not well settled, there may be cases where on an application of the attorney general such a proceeding might be sustained, it is unnecessary to give any opinion on such a case till it arises; it is clear, however, that to sustain such an application the injury must be a public one, and can be redressed only at its suit. 18 Ves. 217, etc.; 2 Johns. Ch. 375, etc.; Harg. Law Tracts, 83, 87. If a public nuisance is also a specific injury to the property of an individual, he has his remedy in equity, not because the act complained of is a nuisance, but on account of the irremediable injury to his private right of property. 6 Johns. Ch. 439, 440. No case has yet occurred, in which an injunction has been granted in favor of

an individual, who claims only a common right on a common highway in which he can have no private property; nor can we conceive one in which it could be justified, unless it was accompanied with an obstruction, or destruction of a private right. The injury too must be what is deemed in equity to be irremediable, a permanent appropriation of the property of the complainant to the use of the defendants, a destruction or total loss consequent on the act about to be done; "if the injury is susceptible of perfect pecuniary compensation, if the ordinary legal remedy in courts of law can afford adequate satisfaction, it is not in the sense of the law irreparable," "it must reach to the very substance and value of the estate going to its destruction in the character in which it is enjoyed." If the act complained of is done under color of an authority conferred by law, the court will not interfere if there is any ground of doubt as to the authority, until the doubt has been removed, and the matter finally determined at law. 7 Johns. Ch. 332, etc., and cases cited; also [Osborn v. Bank,] 9 Wheat. [22 U. S.] 842, etc.; 4 Johns. Ch. 22; Coop. 77; Dickens, 600; 2 Johns. Ch. 473.

The application of these familiar principles of the law of equity to the present motions seems conclusive against them. Mr. Atkinson as the owner of vessels employed in navigating the Delaware and its waters, can have only a common right to the navigation of the Neshaminy, the interference with which by the defendants is not the proper subject of an injunction; but if it were so on general principles, his case would be a clear exception. He does not alledge in his bill, that his vessels have standing masts, or that he would be subjected to any particular inconvenience or expense, by conforming his vessels to the bridge about to be erected, or that they had ever been employed in navigating the Neshaminy prior to the passage of the act. On the contrary, the affidavits of the defendants are full to the fact, that his five schooners have struck masts, and go far to negative their ever having navigated this river as early as 1832. The bill does not state the time when the contract was made for the delivery of lime, or how much of the 1000 bushels remains to be delivered; one schooner load it seems has been received, but we are left in the dark as to the present state of the contract—be that as it may, there seems no impediment to its completion. If his vessels have struck masts, they can pass and re-pass as heretofore, or if the defendants have illegally obstructed the navigation, the injury is one which admits of adequate compensation; it is at most but temporary, as it must cease with the expiration of the contract.

Mr. Field's case differs from the other, only in the circumstance of his being engaged in transporting stone from a quarry on the river above the bridge; this gives him no peculiar claims to our interference, as it is only the mode in which he exercises his common right of navigation—he must stand on the same footing as the other citizens of this and other states, whose common right is protected by the law, subject to the qualifications imposed upon it by the provisions of the charter to this company. So long as they comply with its requisitions for the indemnity of the owners of vessels navigating the river at the time of its passage, this court cannot restrain them in the completion of the bridge; should they refuse to pay for the inconvenience and expenses attendant on the necessary alteration of the vessels, that might be a case of special injury under the provisions of the law, which would call for the interposition of the equitable powers of the court. It appears, however, that the company have made a public offer, to pay for such alterations, which is all they are bound to do before an application for indemnity, by any person who alleges himself entitled to it. Vide 2 Daw. 6, 523; 20 Johns. 105, 740; Bonaparte v. Camden & A. R. Co., [Case No. 1,617.] We can take no judicial notice of any special injury sustained by any citizens of this state, or any general inconvenience to which the people on the Neshaminy or its vicinity may be subject on account of the bridge; those are exclusively the subjects of judicial cognizance in the courts of the state, nor can we in any way consider the injury which any persons who are citizens of other states have sustained who are not parties to this suit. The remedy of injunction is individual, applicable only to special injuries in violation of private right, as to which the grievances of one man can have no bearing on those of another, nor can any alleged grievances of the public authorize any one to redress it at his own suit, either in a court of law or equity. Considering these cases, therefore, as depending either on the validity of the act of incorporation or its construction, we are of opinion that the defendants have full legal authority to erect the contemplated bridge on the plan now in progress, and that it is neither a public nuisance or purpresture; but independently of this consideration, we are also of opinion that neither of the complainants have such a right, as under any circumstances to entitle them to an injunction before a trial at law. There is another objection to their motion arising from the acquiescence of the complainants, from the time, when from the plan of the bridge, it was known that it was not intended to construct it with a draw, and its erection was commenced in September or October last, till the present application was made; this objection might be a very serious one if it was necessary to consider it, but as we have no doubt on the other points in the case, we shall give no opinion upon it. The motions for injunctions are accordingly overruled.